UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SALVATORE A. LOMBARDI, JR. | : | |
| | : | |
| v. | : | C.A. No. 07-21A |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on January 16, 2007 seeking to reverse the decision of the Commissioner. On December 14, 2007, Plaintiff filed a Motion to Remand the Decision of the Commissioner. (Document No. 8). On January 10, 2008, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 9). Plaintiff replied on January 25, 2008. (Document No. 10).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I order that the Commissioner's Motion for

an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and that Plaintiff's Motion to Remand the Decision of the Commissioner (Document No. 8) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on November 10, 2004, alleging disability as of July 15, 2004. (Tr. 43-45). The application was denied initially (Tr. 30-32) and on reconsideration. (Tr. 35-37). Plaintiff filed a request for an administrative hearing. (Tr. 38). On September 5, 2006, a hearing was held before Administrative Law Judge Gerald Resnick (the "ALJ") at which Plaintiff, represented by counsel, and a vocational expert appeared and testified. (Tr. 259-281).

On September 21, 2006, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 13-21). Plaintiff appealed to the Appeals Council by filing a request for review. (Tr. 9). The Appeals Council denied Plaintiff's request for review on November 16, 2006. (Tr. 5-7). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ failed to follow proper standards for pain evaluation; and that the ALJ's residual functional capacity ("RFC") findings are not supported by substantial evidence.

The Commissioner disputes Plaintiff's claims and asserts that there is substantial evidence in the record that supports the ALJ's credibility determination and RFC assessment.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence

as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the

law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified

findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D. The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E. Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42

U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was forty-nine years old at the time of the ALJ hearing, and has a high school education with previous work experience as a printer and janitor. (Tr. 43, 59). Plaintiff alleged disability due to back pain, radiating to his lower extremities, a learning disability, depression and anxiety. (Tr. 258).

Plaintiff visited Dr. Sumit Das, a Neurosurgeon, on July 28, 2004, with complaints of moderate back pain with some radicular symptoms. (Tr. 203). Dr. Das explained that he had examined Plaintiff as well as an MRI of Plaintiff's cervical spine in the past, and he did not recommend surgery. (Tr. 202-203, 210). Dr. Das referred Plaintiff for epidural steroid injections. (Tr. 203). Dr. Das also noted that Plaintiff wanted to be "out of work," and he had restricted Plaintiff to light duty for two weeks, but overall he did "not see any acute need to keep [Plaintiff] out long term." Id.

Plaintiff presented to the Rhode Island Hospital Emergency Room on July 29, 2004, (the day after Dr. Das refused to put him "out of work" (Tr. 203)), complaining of back pain with radiation

of the pain into the right leg. (Tr. 129). Plaintiff informed that he initially injured his back in October 2003, but he was experiencing an increase in his back pain over the past month. Id. On examination, Plaintiff's back was non-tender, range of motion exercises were painless and straight leg raising was negative. (Tr. 133). Plaintiff was diagnosed with chronic low back pain and was prescribed Percocet. (Tr. 130, 133).

Plaintiff was referred to Dr. Christopher Ortiano for epidural steroid injections. (Tr. 134-135). At an examination on September 28, 2004, Plaintiff relayed that he had experienced progressive back pain over the last several months with hip pain that occasionally radiated into his extremities. (Tr. 134). Dr. Ortiano noted that Plaintiff's most recent MRI, dated September 30, 2003, showed broad based disc protrusion which was creating some foraminal narrowing bilaterally at the L5 nerve root. Id. Plaintiff's mental status exam and cranial nerve exam were normal. Id. Motor examination of the limbs was intact with full power and tone and no abnormal movements. Id. Sensory examination was unremarkable with no focal deficit in a peripheral nerve or root distribution. Id. Dr. Ortiano noted that palpation of the spine and lower back revealed mild to moderate tenderness in the lumbar region, but nothing that was very localized. Id. Dr. Ortiano diagnosed Plaintiff with low back pain, lower extremity pain and lumbar disc disease. (Tr. 136-138). Dr. Ortiano performed three epidural steroid injections on Plaintiff between October 7, 2004 and November 8, 2004. Id.

An MRI report was reviewed by Dr. Das on October 20, 2003. (Tr. 202). In a note to Plaintiff's primary treating physician, Dr. Ernest Zuena, Dr. Das wrote that the MRI showed some degenerative changes throughout, but there was no significant compression. Id. Surgical intervention was not recommended, and physical therapy was suggested. Id.

Plaintiff underwent a consultative physical examination by Dr. Ernest Zuena on November 24, 2004.[1] (Tr. 139-140). Dr. Zuena recounted the history of Plaintiff's back pain, noting that Plaintiff experienced low back pain with radiation of the pain into the buttock and bilateral thighs. (Tr. 139). Dr. Zuena noted that Plaintiff was treated with physical therapy, medication and epidural steroid injections and that Plaintiff was not a surgical candidate because of his obesity, his history of cigarette smoking and MRI findings. Id. On physical examination, Dr. Zuena noted Plaintiff's height, weight and blood pressure, but there is no indication that Dr. Zuena conducted a musculo skeletal examination of Plaintiff. Id. Dr. Zuena remarked that Plaintiff was taking an anti-inflammatory medication and that conservative management was not resolving Plaintiff's symptoms. Id. Dr. Zuena suggested that Plaintiff be considered totally and permanently disabled at that time. (Tr. 140).

An MRI of Plaintiff's lumbar spine was performed on March 9, 2005. (Tr. 227-228). This scan was compared with Plaintiff's prior scan on September 30, 2003, and there was no significant interval change noted. Id. There was no evidence of any new disc herniation, spinal canal narrowing or neural foraminal narrowing. (Tr. 228). Minimal disc protrusion at L5-S1 and minimal facet degenerative changes were noted, but no other changes were observed. Id. X-rays of the lumbosacral spine taken the next day showed normal lumbar alignment and curvature and minimal degenerative changes. (Tr. 229). At a follow-up appointment on March 30, 2005, Dr. Das informed Plaintiff that the recent MRI showed no new changes and that he did not believe surgical

---

[1] The record reveals that Dr. Zuena served as a primary care physician to Plaintiff beginning September 2002 through at least May 15, 2006. (Tr. 204-226, 247).

intervention would benefit him. (Tr. 234). Dr. Das suggested that Plaintiff lose weight and exercise in a pool. Id.

Dr. Zuena submitted an updated report on Plaintiff's condition to Disability Determination Services on May 2, 2005. (Tr. 185-186). Dr. Zuena wrote that Plaintiff was seen in his office on two occasions since November 2004 and that he referred Plaintiff to a neurosurgeon, Dr. Das, who advised against surgical intervention. (Tr. 185, 234). Dr. Zuena informed that, despite his advice and the advice of Dr. Das, Plaintiff was not walking in an effort to lose weight, there were no other weight reduction attempts and he continued to smoke cigarettes. Id. Dr. Zuena opined that, as of Plaintiff's last visit on February 16, 2005, Plaintiff "should be considered totally and permanently disabled at this time." (Tr. 186).

On August 8, 2006, Dr. Zuena completed a medical questionnaire in which he wrote that Plaintiff had the impairments of multi-level advanced degenerative joint disease, morbid obesity and hypertension. (Tr. 245-246). Dr. Zuena indicated that Plaintiff's resulting symptom was "severe" pain. (Tr. 245). He informed that Plaintiff was prescribed Norvasc and Vicodin, which produced no side effects, and he concluded that Plaintiff was unable to sustain competitive employment on a full-time basis. (Tr. 246).

On May 26, 2005, Dr. J.R. Bernardo, a non-examining Medical Consultant, reviewed the evidence of record and rendered a physical RFC assessment of Plaintiff. (Tr. 188-195). Dr. Bernardo suggested that Plaintiff remained capable of lifting and carrying twenty pounds occasionally and ten pounds frequently; standing and/or walking for six hours in an eight-hour workday; and sitting for about six hours in an eight-hour workday. (Tr. 189). He opined that Plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling,

but he has no manipulative limitations. (Tr. 190-191). Dr. Bernardo indicated that Plaintiff should avoid concentrated exposure to extreme temperatures, wetness, humidity, fumes and hazards, but his exposure to noise and vibration is unaffected. (Tr. 192).

On mental status examination, Dr. Louis Turchetta noted that Plaintiff presented as sad and depressed, but Plaintiff established rapport easily and he maintained eye contact. (Tr. 153). Dr. Turchetta observed that Plaintiff's gait, posture, body movements and fine motor skills were within normal limits; no awkward movements or bizarre mannerisms were present; and, Plaintiff's speech was spontaneous, fluid and audible. (Tr. 151). Plaintiff was coherent, he was able to express his thoughts clearly, and his overall insight, judgment and reasoning were intact. (Tr. 153). Plaintiff was oriented to person, place and time. Id. With regard to his daily activities, Plaintiff stated that he is able to attend to his self-care needs independently, he handles his own finances and he drives short distances, while his family does the cleaning, shopping and cooking. (Tr. 152, 155). Plaintiff relayed that his activities were limited to watching television and that his back problems prevented him from bowling. (Tr. 155). When asked about social relationships, Plaintiff explained that he had a few friends and that he maintained contact with his family, but he tended to be cautious around people. Id. He expressed no difficulty with authority figures. Id.

Dr. Turchetta administered the Wechsler Adult Intelligence Scale - III and Plaintiff earned a verbal IQ score of 83, a performance IQ score of 85 and a full scale IQ score of 83. (Tr. 152). Plaintiff experienced no difficulty following, understanding or remembering the instructions given to him, and his attention and concentration were fair. (Tr. 155). Dr. Turchetta remarked that Plaintiff's long-term and short-term recall was commensurate with his cognitive ability, as was his comprehension and judgment of social situations. (Tr. 153-154). Plaintiff's task persistence was

within normal limits, and he was able to stay focused during the assessment. (Tr. 155). Dr. Turchetta posited that Plaintiff is functioning in the low average range of cognition and that Plaintiff experiences moderate emotional discomfort. (Tr. 154). Dr. Turchetta diagnosed a mood disorder due to a medical condition and a learning disorder, and assigned a Global Assessment of Functioning ("GAF") score of 60. Id.

On referral from his attorney, Plaintiff underwent a consultative psychological evaluation by John P. Parsons, Ph.D., on August 7, 2006. (Tr. 238-244). Plaintiff reported back problems, including a pinched nerve and a herniated disc, to Dr. Parsons and stated that his medical problems made him depressed and nervous. (Tr. 239). He stated that he had difficulty with academic achievement and that he was enrolled in special education as well as regular classes. Id. Plaintiff told Dr. Parsons that he did not smoke cigarettes. (Tr. 240). Dr. Parsons noted that Plaintiff never had a psychiatric hospitalization or outpatient psychotherapy and he had not been prescribed psychotropic medication. (Tr. 241). There was no history of a thought disorder. (Tr. 243).

With respect to his activities, interests and relationships, Plaintiff informed Dr. Parsons that he does some shopping, cooking and cleaning and he is able to complete routine household tasks, though he has difficulty because of pain. Id. Plaintiff stated that he is no longer able to do many of the activities he previously enjoyed, but he is able to drive, and he occasionally drives a friend to work and goes to a local coffee shop. (Tr. 241, 243). He is close to his family, he has a few friends who are supportive and he socializes on occasion. Id.

On mental status examination, Plaintiff was depressed and pessimistic and his affect was restricted. (Tr. 242). He had an apprehensive manner, and his thought processes were distracted, but he was not confused or disoriented, and he was oriented to person, place and time. Id. He was

able to follow and understand directions without significant impairment. (Tr. 243). Dr. Parsons noted some impairment with attention and concentration, and moderate problems were noted with Plaintiff's immediate and recent memory. (Tr. 242). Plaintiff's language skills were intact, and he appeared capable of functioning within the upper limits of the borderline range of general intelligence. (Tr. 243). His responses on the Beck Anxiety Inventory and the Beck Depression Inventory were indicative of moderate problems with anxiety and depression. (Tr. 241). Dr. Parsons diagnosed Plaintiff with anxiety disorder and ruled out borderline intellectual functioning. (Tr. 243-244). He indicated that Plaintiff does not have a personality disorder, but that there are dependent features. (Tr. 244). Dr. Parsons assigned Plaintiff a GAF score of 57 and opined that the combined effects of Plaintiff's depression and anxiety would make maintaining gainful employment "a difficult task." Id. Dr. Parsons concluded that Plaintiff has moderate limitations in his abilities to relate to other people; function socially; understand, carry out and remember instructions; respond appropriately to coworkers; perform simple tasks; and perform repetitive tasks. (Tr. 256-257). He also concluded that Plaintiff is moderately severely limited in his abilities to engage in activities of daily living; attend and concentrate in a work setting; respond appropriately to supervision; respond to customary work pressures; perform complex tasks; and perform varied tasks. Id.

On January 27, 2005, Dr. Susan Diaz-Killenberg, a non-examining Medical Consultant, reviewed the evidence of record and assessed Plaintiff's mental RFC. (Tr. 156-173). Dr. Diaz-Killenberg opined that Plaintiff has a mild restriction of his activities of daily living and mild difficulties in maintaining social functioning. (Tr. 166). Plaintiff has moderate difficulties maintaining concentration, persistence or pace, but there is no evidence of any episodes of decompensation. Id. Dr. Diaz-Killenberg explained that the evidence suggested that Plaintiff is able

to understand and recall simple tasks and carry out simple tasks for two-hour periods over an eight-hour workday. (Tr. 173). She posited that Plaintiff could make work-related decisions and could work without special supervision and that his work pace was sufficient to tasks that are not highly time pressured. Id. Dr. Diaz-Killenberg indicated that Plaintiff could interact superficially with the public, and he could interact appropriately with coworkers and supervisors. Id. She added that Plaintiff would be slow to adapt to change in the workplace due to distractibility, but he is aware of hazards, he could plan for simple tasks and he could drive or take a bus to work. Id. The medical evidence was reviewed again on March 26, 2005 by Joseph Litchman, Ph.D., and he concurred with Dr. Diaz-Killenberg's assessment. (Tr. 168, 173).

### A. The ALJ's RFC Assessment is Supported by Substantial Evidence

The ALJ found that Plaintiff suffers from lumbar degenerative disc disease, obesity, mood disorder due to medical condition and a learning disorder. (Tr. 15). Although he found these impairments to be "severe," they were not of "listing-level" severity. (Tr. 15-16). The ALJ concluded that Plaintiff retained the RFC to perform light work with certain noted exertional and non-exertional limitations including a need to avoid highly time pressured work environments and a moderate restriction in the ability to concentrate and attend. (Tr. 16). Based on testimony from the vocational expert, the ALJ determined that Plaintiff was not disabled, as there exists substantial jobs in the unskilled light and unskilled sedentary occupational groupings that would accommodate Plaintiff's RFC. (Tr. 20).

Plaintiff primarily argues that the ALJ erred in his evaluation of a medical questionnaire completed by his treating physician, Dr. Zuena, in August 2006 (Ex. 26F), and a mental RFC questionnaire completed by a consulting psychologist, Dr. Parsons, in August 2006. (Tr. 256-257).

As to Dr. Zuena's total disability opinion, the ALJ declined to give it any "probative value" because it was devoid of "objective findings" to support the conclusion. (Tr. 17, 19). The ALJ also found his opinion to be inconsistent with Plaintiff's diagnostic tests and treatment, and noted Plaintiff's failure to pursue recommended treatment. (Tr. 19).

A treating physician is generally able to provide a detailed longitudinal picture of a patient's physical impairments, and an opinion from such a source is entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(d). The amount of weight to which such an opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations. See 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(d)(2). "[An ALJ] may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors." Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (citing Shaw v. Sec'y of Health and Human Servs., 25 F.3d 1037 (1st Cir. 1994)).

The ALJ's rejection of Dr. Zuena's total disability opinion did not violate the treating physician rule. See 20 C.F.R. § 404.1527(d). Dr. Zuena rated Plaintiff's pain as "severe" and concluded that he could not "sustain competitive employment on a full-time, ongoing basis." Ex. 26F. The ALJ concluded that Dr. Zuena's opinion was not, however, supported by diagnostic test results or other objective evidence. (Tr. 19). The ALJ's conclusion is supported by the record. For instance, a 2005 MRI of Plaintiff's lumbar spine showed only "minimal" disc protrusion and facet degeneration. (Tr. 227-228). There were also no significant changes noted from a prior MRI

performed in 2003 when Plaintiff was working. (Tr. 46, 50, 227, 271). Further, spinal x-rays obtained in 2005 showed normal lumbar alignment and curvature and minimal degenerative change. (Tr. 229). Plaintiff essentially conceded the lack of objective support. Plaintiff argues that Dr. Zuena "clearly believed that despite the objective findings, [he] experienced severe pain." (Document No. 8 at 13). In other words, Dr. Zuena believed Plaintiff's subjective pain complaints even though they were not supported by medical evidence. Cf. 20 C.F.R. § 404.1528(a) (claimant's statements as to symptoms "alone are not enough to establish" an impairment). Finally, as accurately noted by the ALJ, Dr. Zuena opines that Plaintiff's pain is "severe" but he did not refer Plaintiff to a pain clinic or other pain treatment program. Rather, Plaintiff was advised to exercise. (Tr. 185, 234). Plaintiff has shown no error in the ALJ's evaluation of Dr. Zuena's opinion as to total disability. See 20 C.F.R. § 404.1527(e) (while treating source can report medical findings and opine on nature and severity of impairment, the ultimate issue of disability is reserved to the ALJ).

Similarly, Plaintiff has shown no error in the ALJ's valuation of Dr. Parsons' opinion. See Tr. 256-257. Specifically, the ALJ explained that Dr. Parsons' opinion was entitled to "limited probative value" because it was inconsistent with his own examination findings as well as with the findings of the State Agency Consultative Examiner, Dr. Turchetta. (Tr. 19). Dr. Parsons opined that Plaintiff's ability to attend and concentrate in a work setting was moderately severely impaired, but on examination, Dr. Parsons noted only that Plaintiff's attention and concentration were impaired, he had only moderate problems with immediate and recent memory and he was oriented to person, place and time. (Tr. 242, 256). Dr. Parsons suggested that Plaintiff's ability to respond appropriately to supervision was also moderately severely impaired; and his ability to relate to others was moderately impaired, but Plaintiff reported that he held a job for ten years, he socializes on

occasion with friends, he occasionally drives a friend to work and goes to a coffee shop and he maintains close relationships with family members. (Tr. 240-241, 243, 256). Plaintiff's abilities to attend and persist were classified as moderately severely limited, but on examination, Dr. Parsons observed only that Plaintiff was distracted and his attention and concentration were "impaired." (Tr. 242, 256). Dr. Parsons posited that Plaintiff was moderately limited in his abilities to perform simple tasks and understand, remember and carry out instructions, but Plaintiff was able to follow and understand directions without significant impairment. (Tr. 243, 256-257). The ALJ accurately commented that Dr. Parsons' moderately severe limitations are also inconsistent with his assignment of a GAF score of 57, which corresponds to moderate symptoms. (Tr. 18, 244).

Dr. Parsons' opinion that Plaintiff is moderately severely limited in these functional areas is also inconsistent with other evidence of record, namely, the examination findings of Dr. Turchetta. For instance, Dr. Parsons indicated that Plaintiff was moderately severely limited in his abilities to attend and concentrate in a work setting; attend and persist; perform simple tasks; and, understand, remember and carry out instructions, but at his 2004 evaluation with Dr. Turchetta, Plaintiff's task persistence was within normal limits, his attention and concentration were fair and he stayed focused throughout the testing session. (Tr. 151, 256-257). Plaintiff showed no significant difficulty following or understanding all of the directions and instructions given by Dr. Turchetta and his insight, judgment and reasoning were intact. (Tr. 151, 153). Dr. Parsons also theorized that Plaintiff's ability to respond appropriately to supervision was moderately severely impaired and his ability to interact with others was moderately impaired, but Dr. Turchetta observed that Plaintiff was pleasant, cooperative and established rapport easily. (Tr. 151, 256-257). As Dr. Parsons'

conclusions are inconsistent with other evidence of record, the ALJ was entitled to give them limited weight. See 20 C.F.R. § 404.1527(d).

Plaintiff's contention that the GAF score of 57 assessed by Dr. Parsons does not necessarily refer to his occupational functioning also lacks merit. The GAF scale is used in "assessing psychological, social, and occupational functioning." American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, at pp. 30, 32 (4th ed. 1994). In fact, despite Plaintiff's claim to the contrary, a GAF score of 57 corresponds to "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." Id. at 32. The GAF scale clearly contemplates an individual's occupational functioning, and the ALJ's statement that a GAF score of 57 is indicative of moderate limitations is accurate.

Lastly, Plaintiff asserts that the ALJ erred when he relied upon the opinions of the non-examining State Agency physicians in assessing his RFC because those physicians did not see the opinions rendered by Dr. Zuena and Dr. Parsons. (Document No. 8 at 14). This argument is not persuasive. Dr. Bernardo rendered his physical RFC assessment of Plaintiff on May 26, 2005, at which time nearly all of the medical evidence pertaining to Plaintiff's physical impairments was part of the record. (Tr. 97-140, 150, 175-186, 188-195, 197-222, 227-229). Dr. Zuena's bare contention that Plaintiff is disabled, without citation to any past or recent medical signs or laboratory findings, would not have affected Dr. Bernardo's assessment. (Tr. 245-246). Moreover, Dr. Zuena previously opined that Plaintiff was "totally and permanently disabled," and this statement was part of the record considered by Dr. Bernardo. (Tr. 140, 186, 245-246).

The mental RFC assessments rendered in 2005 by Dr. Diaz-Killenberg and Dr. Litchman would likewise remain unaffected by Dr. Parsons' opinion. (Tr. 171-173). Upon reviewing the

medical evidence of record, these consultants found that Plaintiff's distractibility and diminished concentration limited him to understanding, recalling and carrying out "simple tasks," a finding that is consistent with by Dr. Parsons' observation that Plaintiff could understand and follow directions without significant impairment. (Tr. 173, 243). The consultants determined that Plaintiff could interact appropriately with supervisors and coworkers, which is supported by Plaintiff's own statements to Dr. Parsons that he held a job for ten years, he socializes on occasion with friends, he occasionally drives a friend to work and goes to a coffee shop and he maintains close relationships with family members. (Tr. 173, 240-241, 243). Thus, there is no basis for Plaintiff's argument that the consultants' RFC assessments are flawed because they were not based on a "full" record.

**B. The ALJ Properly Evaluated the Credibility of Plaintiff's Pain Complaints**

Plaintiff contends that the ALJ did not properly evaluate the credibility of his pain complaints under Avery. See Sections IV, E, 1 and 2, supra. The ALJ determined that Plaintiff's statements concerning the "intensity, persistence and limiting effects of his [alleged] symptoms are not entirely credible." (Tr. 16). Again, Plaintiff has shown no error in the ALJ's evaluation.

While the ALJ could have provided a more detailed explanation of the basis for his credibility finding, his failure is not reversible error given the totality of the record. See 20 C.F.R. § 404.1529(a) (ALJ must consider whether degree of pain alleged "can reasonably be accepted as consistent with the objective medical evidence and other evidence"). As noted by Plaintiff, the ALJ did not identify any inconsistency in his testimony or conflicts between his testimony and prior statements to doctors or on disability applications/questionnaires. However, a conflicting statement is not the exclusive avenue to discredit a claimant's crediblity. For instance, although Plaintiff alleged disabling pain, the ALJ accurately noted that the objective medical evidence showed only

mild to moderate degenerative changes. (Tr. 16-17, 227-229). Further, Plaintiff "acknowledges [in reply] that his pain may be greater than is demonstrated by the objective evidence." (Document No. 10 at 2).

In assessing Plaintiff's credibility, the ALJ observed that Plaintiff's treating Neurosurgeon, Dr. Das, did not recommend surgery to treat Plaintiff's back pain and, instead, Plaintiff was referred for conservative treatment, including physical therapy and epidural steroid injections. (Tr. 16-17, 202-203, 234). A 2004 statement from Dr. Das that he did not see any need to keep Plaintiff out of work "long term," was also referenced by the ALJ. (Tr. 17, 203). Indeed, as the ALJ observed, in March 2005, Dr. Das indicated that he did not recommend surgical intervention and suggested that Plaintiff lose weight and exercise in a pool. (Tr. 17, 234). Plaintiff's treating primary care physician, Dr. Zuena, similarly noted that exercise, weight loss and smoking cessation were recommended to Plaintiff, but that Plaintiff did not follow these suggestions. (Tr. 17, 185). See Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002) (ALJ's adverse credibility finding supported by claimant's failure to lose weight and do physical therapy exercises to alleviate alleged back pain). In light of the evidence of record, the ALJ reasonably concluded that Plaintiff's subjective complaints were not "entirely credible." Plaintiff has shown no error.

## VI. CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and that Plaintiff's Motion to

Remand the Decision of the Commissioner (Document No. 8) be DENIED. Final judgment shall enter in favor of the Commissioner.

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 28, 2008